I please the Court, Stephen Berlin, for the Ramones, the appellants. First, as a personal note, I want to thank the Court for accommodating my schedule with the setting of the oral argument. Turning to the case itself, there are not that many IDEA attorneys' fees decisions in the appellate courts, and I do think it's useful to look at the congressional mandate in this area, because the defendant is a school district. It's a public entity, and whether that should weigh in the balance or not is something that could affect a court's thinking. And in our view, Congress has mandated that the school district's position as a public entity, a school district, should not affect the analysis except in one particular way. The way we know that is that the predecessor's statute did not have an attorney's fee provision at all. The Supreme Court held that no fees could be awarded under the statute and explained that the omission of a fees provision was in recognition of the financial burden that it would create for school districts. Kennedy, was the question really entitlement to fees or the amount of fees?  Nobody said that the amount of fees was the amount of fees. The claimant is not entitled to fees. Yes, Your Honor. The question is, was the setting of the fees correct? That's correct. And the issue I'm trying to address is, is there sub rosa here, a consideration that the defendant is a school district, and is that affecting any analysis? My only point is that when Congress legislatively overruled the Smith case, where the Supreme Court held that fees were unavailable because it would create a financial burden. The Congress was rejecting that viewpoint. And holding that, school districts had to be held to the same standard for fees as a private employer in a Title VII or ADEA case. So I think that's, from a policy perspective, important at looking at it. I think also, just looking, just momentarily at the extent of the fees here in a general kind of global way, we do have to consider the fact that this was an extraordinarily complicated case, both on the facts and the law. The administrative hearing officer said that it raised virtually every issue that can be And to some extent, the school district really has to look to itself for why some of these fees were incurred. I thought that was the best argument on the amount of fees, as I see it from your side. The fact that the court relied on the fees charged by the group. Lawyer, the people who represent schools relied on that as a major element in Yes, Your Honor. Those points on the brief, you know, I certainly, those are the principal points. That they relied on a government agency which is not reflective of the private market, and the other points as well. They really neglected that Ms. Coger brought 20 years of experience. But now isn't that discretionary? In other words, when a judge looks at a lawyer's qualifications, is it absolutely required as a matter of law that the non-lawyer experience of that lawyer has to be taken into account? Well, the skills of the lawyer are one of the standards that the court must look to. And the court did recognize that Ms. Coger had developed skills in these areas. And I believe these areas are- Not lawyer skills, though. Skills that are necessary to understand the facts of a very complicated case like this. So you think that's an abuse of discretion? I do. I think that when a person brings extreme familiarity with very complicated facts, it would be something like a patent lawyer who had a degree in engineering and had been working with inventions for many years, working on a case, a patent case. The lawyer brings all of that engineering experience, which allows him. What it finally ends up doing is it allows the lawyer to be far more efficient than they would be otherwise, because they don't have to spend hours and hours consulting with experts. The court's ultimate conclusion here was that she was very inefficient, it appears. So is that – if he thought that after looking at all the errors, presumably he could do one or the other. He can cut the fees or he can cut the rates or he can cut the errors. He can cut both. Is that a problem? Yes. That's – you know, we mentioned the Van Gerwen case. And it is a problem. It should be enough to adjust the fees to the rates to reflect the fact that her lesser experience – What rate are you arguing for and how do we do it? I mean, suppose we concluded that the rate he actually gave her was too low, then what? I think, you know, normally you would look to rates being charged by people with similar experience in the same community. The difficulty is there aren't people in the same community who are doing this kind of work. And as a practical matter, that meant the Ramones had to go outside the community to find somebody. But there are at least two, right? Well, I don't know who they are. One of them is the person who first represented the Ramones at the administrative level. She had withdrawn from the case. But her fees are relevant. Why aren't her fees relevant? No one put her fees on the record. As best I can recall, there was an effort to obtain a declaration from her and none was obtained. I think I don't know whether she's practicing at all and I just don't know exactly what happened with that. But yes, those would have been helpful. I think the thing we have that's most helpful is Nicole Meisner, because although she was working for the government agency initially, when she left, she did go into  for about an hour. What was the status of that declaration in this case? Was it objected to on disqualification grants? No. There are no objections to it at all other than comments made in Ms. Inman's declaration in which she's basically saying that Ms. Meisner should not be helping out the other side. Which is probably right. I mean, isn't that a very odd thing to do? I do think Ms. Meisner, I mean, I think we could have taken her deposition if the district court allowed discovery on this. And I think she would have had to answer every one of those questions. What are you doing now? What are your current rates? Is school's legal service a government agency? Do you know of anyone else in the area practicing special education law? None of those were privileged, and we would have been entitled to any of them at a deposition. So I don't think there was anything wrong with those disclosures. We did request them of her, and she made them. So I think other than that, if there are no further questions, I would reserve the rest of my time. Thank you. And now we'll hear from the school district. May it please the court, my name is Stacey Inman, representing the defendant appellee Kern High School District. Dr. Steve Moyer is present today from the Kern High School District. I'd like to address Judge Berzon's question about the Van Gerwen case. I don't think it stands for what the appellant has alleged. In that case, it was an ERISA action, and it was only looked at double billing when a multiplier was used. Multipliers are not used in this type of litigation, specifically under 20 U.S.C. 1415. They're specifically not allowed to be used. And so in that case, what they did is they looked at the Lodestar, and they also found that prior to looking at the Lodestar, the court could withdraw hours if those hours were redundant, unnecessary, or excessive. And so the court in that case did limit the hourly rate of the attorney due to that attorney's experience and also reduced the hours because some of the hours were redundant, excessive, and unnecessary. And that's what we have here. So when they looked at double billing, which is what Mr. Berlin is alleging, they were looking at the multiplier effect used on top of the fact that they had reduced the hourly rate and the number of hours. In this case, there were ---- Here, what happened ---- the judge ---- I'll just take the number of hours now. The judge complained, first said, or the magistrate judge, that there was ---- she spent too many hours talking to the clients and too much time doing the legal research. That was about 500 hours. Yes. He ended up, as far as I can tell, giving her zero for that, for those things, because he ended up deducting, I think, like 600 hours. Yes. However, I don't think he took it solely from that location. I think he looked at everything, and he was delineating extensive amount of hours and different things. He also noted that the amount of post-administrative hearing time for the brief was approximately 155 hours, which was after the litigation was over, after the hearing was over, and that time was used to write a closing brief and to listen from the tape. All right. So assuming that ---- so now we have 650 hours in those three things, which are the three main things he did. Yes. Right. And then he deducts 600 hours. So he seemed to have left 50 for those three things. I think what was most difficult for the judge, if you've looked at the excerpt of record, there were 90 pages of billing, and he ---- in my first brief to the magistrate judge, I tried to synopsize as well because of the categories and being unable to know, even though with the categories, looking at legal research, looking at telephones, looking at post-administrative. It did all that. And then in terms of explaining what he did, I mean, the best I could get out of it was that he took 650 hours and made them 50, because that's basically the three things he seemed to think were excessive. I think he ---- I think he looked at the time and labor required and whether it was excessive, the customary fee, whether it was a contingent fee. She only took $100. I'm not aware he got the amount of deduction that he gave. I don't think he articulated where he took it from. I agree with you. He didn't articulate where he took it from. He looked at the whole ---- As far as we have clues, we know what he was complaining about. It was those three areas, and that adds up to pretty close to what he deducted. Yes. But he doesn't specifically articulate that he took it from those two areas. He uses analogies to show why he believed it was excessive. And the fact that he found in his decision that there was no explanation also to the concept of those areas. There's no explanation what the legal research went to, whether it was a motion to compel, whether it was a speed of justice taken, whether it was what type of trial preparation, was an interview of this witness or an interview of that witness, that there ---- that Ms. Coger worked every working day, every business day from January 01 to February 02 on this case, and that there are two, in my brief, there are two occasions when on two separate days she charged 40 hours at one time and 26 hours on a single day. And that not until I raised that issue did they respond saying that that was a group of work and that they only delineated it on that day after a group of work had been done. But again ---- The judge didn't mention any of that. I'll try to locate that. But the district judge ---- He didn't mention it as being a problem. I mean, it sounds like it could be a problem, but he didn't mention it. The district court judge and the magistrate judge did ask that she clarify why ---- what the basis for those subject categories was. And that never happened. That never occurred, even though both the magistrate judge and the district court asked for that delineation. It is the fee applicant's burden to produce the evidence in this case. And the fact that we had a magistrate judge originally, that all they had were declarations from Ventura County attorneys, which is not in the Eastern District, is significant. The intention, as I understand it, is there was no comparable person. There was this one woman, Huffman, who was what they couldn't have hired. Yes. And there was this one guy that you tried to ---- that you relied on, but it doesn't look like he does a whole much of this stuff. He doesn't seem to have done ---- maybe he's done one hearing. And then there's this woman who used to be in your office and who's now out there, and that seemed to be it. I mean, you ---- I mean, I must say that the affidavit or the declaration that your office submitted where you relied on nonlawyers was somewhat distressing. I delineate them as advocates, but I should have added to, yes, that they were not lawyers, that typically at least 30 to 50 percent of the administrative hearings are handled either in pro por or by advocates in this area. I try to delineate other lawyers. The thing that wasn't looked at by either side, there's a slew ---- I won't say slew. There's a group of attorneys in Fresno, which is also in the Eastern District, that wasn't even looked at. But there is a ---- The record, it appears, is that there really was a need to go outside of Bakersfield to go, so what are you going to get in Bakersfield? But we had Mr. Muir, we had ---- He seems to have been ---- he's listed as a personal injury lawyer, and he appears to have done almost none of this, just from looking at records. I did indicate in one of my declarations that Ms. Huffman charged $210 an hour at the time that she was representing. Ms. Huffman wasn't available. In terms of why she had to go outside of the area, right? Yes. Now, if she did have to go outside of the area, and if people outside of the area charged more, can she use those figures? I don't believe she can. Los Angeles is an entirely different market. Now, I'm asking you that. I'm asking you if she had to go outside of Bakersfield, because Bakersfield, there were not local lawyers available, and it turns out she had to go outside, including to Los Angeles. Can she use Los Angeles fees because she had to go to Los Angeles where there was nobody local? Right. I believe under Gates v. Duke Majan that ---- which, from this Court, it's discretionary to go outside, but it certainly is not necessary to go outside of the forum. And the forum, the community is defined by that case as being the forum where the district court sits. Even if this Court did look at outside the forum of the eastern court, district court, you would see that Mr. Fultz and Ms. Covington had extreme expertise beyond Ms. Coger's abilities. Mr. Fultz, I believe, has been a lawyer for approximately 20 years, teaches classes on special education and is a psychologist. And Ms. Covington, I believe, at least 10 years of experience, possibly more. I am personally aware that there are many attorneys in the Los Angeles market that have years of experience in this area of law comparable to Ms. Coger in the two- to three-year area. But you didn't introduce any evidence, though. And it's their burden to introduce that evidence to show if that would be appropriate. But, again, $390 an hour for an attorney ---- She didn't ask for $390 an hour. No, she asked for $225. And she had only been an attorney for two and a half years. And this case appeared, by my research, to be the first case she had taken to decision in this area of law. There was a conflict of the record on that, as I understand. You said that, but she says I think this was a sixth or something like that. She said she had done nine, six of which were mediated and three which went to decision. But she didn't allege when the timing of those. And when this case was completed, and when I did my research, I couldn't find any of those other two cases that showed that they went to decision. And there was no supplemental information in the record to support those two other cases. I think I did, through my declaration, objection probably isn't the right word, but I did disagree that any information should be brought in by Ms. Meisner. She was an attorney with the school's legal service representing the current high school district on this specific case. And I failed to ask that it just be stricken as disqualifying, but you didn't do that. Yes, I failed to ask that it be stricken. But I informed the Court that she was the attorney representing the current high school district at the time. She obviously couldn't tell this Court or the district court what her fees were at that point in time, because she was representing the school's legal service and current high school district. And also, I believe they looked at my private rates with a law firm, not just me being with a nonprofit entity. I was with a private law firm in Fresno representing Kern County, L.A., and Fresno County at that point in time charging $175 an hour. And I believe they used that with Mr. Muir to come up with the number of $150 an hour. I see that my time is up. Thank you very much. Thank you. Thank you. You've saved a little time. The school district appears to be contending that the Court has to look at Ms. Coger's abilities, skills as of the time of the hearing. The cases that have been cited by both sides, including I believe it's Gates v. Duke-Majan, hold squarely that it is a discretionary question whether to apply the rates that are current now or the historic rates that applied at the time. Ms. Coger began working on this case over three years ago. She has not seen a nickel of fees. It was the principal work that she did during those 16 months. As Ms. Inman pointed out, to some extent or another, for at least a few minutes, every single working day of the 16 months, Ms. Coger worked on it. That's the exact kind of reason that courts have been – that you have advised courts that they should consider using current rates rather than historic rates. If there are no other questions, thank you. Thank you very much for your helpful argument from both of you. The case of Ramone v. Curran High School District is now submitted for decision. We are in adjournment for the rest of the day. We will reconvene tomorrow at 9 o'clock. Thank you very much. All rise. 9.30. 9.30. We will reconvene at 9.30 at Holt Hall. We will reconvene at 9.30 at Holt Hall. This court is now adjourned. 9.30. 9.30.
judges: T.G. Nelson, W. Fletcher, Berzon